**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                            )
**UNITED STATES OF AMERICA,**               )
                                            )
      **Plaintiff,**                )
                                            )
                                            )
      **v.**                       )   Criminal No. 11-10299-DJC
                                            )
                                            )
**DONDRE SNOW,**                            )
                                            )
      **Defendant.**                )
                                            )
_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                                                       **May 11, 2015**

### I.   Introduction

Defendant Dondre Snow ("Snow") has filed a motion to vacate his sentence under 28 U.S.C. § 2255. D. 53. Snow argues that his guilty plea was not knowing, voluntary and intelligent because he entered the plea while unaware of Annie Dookhan's misconduct at the Hinton Drug Lab. Id. For the reasons stated below, the Court DENIES Snow's motion to vacate.

### II.  Standard

Pursuant to 28 U.S.C. § 2255, an individual may move to vacate his sentence if such "sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." David v. United States, 134 F.3d 470, 474 (1st Cir. 1998) (citing Hill v. United States, 368 U.S. 424, 426-27 (1962)). The petitioner bears the burden of demonstrating

1

cause for relief under § 2255. Id. A conviction is subject to collateral attack if based upon a guilty plea which was not made knowingly or voluntarily. Ferrara v. United States, 456 F.3d 278, 289 (1st Cir. 2006). In the usual circumstance in which a defendant was warned of the consequences of his plea and the range of potential punishment before entering a guilty plea, a defendant must demonstrate two things to prove involuntariness: (1) egregiously impermissible conduct by a government agent predated his plea; and (2) this conduct materially affected his decision to plead guilty. Id. at 290.

### III. Factual and Procedural History

Snow was charged with distribution of cocaine in a school zone in violation of 21 U.S.C. §§ 841(a)(1), 860. D. 1.[1] The charge resulted from the controlled purchase of crack cocaine. D. 146-1. On June 7, 2011, an ATF Special Agent and two Boston Police detectives met with a cooperating witness ("CW") for the purpose of arranging the controlled buy. Id. The CW was given government funds, the serial numbers of which had been recorded in advance. Id. The CW asked Snow for "five for eighty"—i.e., five twenty dollar bags of crack cocaine for eighty dollars—and gave Snow the buy money. Id. Snow removed three plastic bags of crack cocaine from inside his mouth and handed them to the CW. Id. Snow then directed another individual to give the CW the remaining two bags. Id. When the transaction was complete, the CW asked Snow for his name and telephone number, which Snow provided, and asked about the availability of an "8-ball." Id. Snow agreed to a price of $150.00 and the CW told Snow that he would call Snow in the future. Id. The CW then surrendered the five bags to detectives who sent them to the lab for testing. D. 40 at 16. Law enforcement monitored the transaction on

---

[1] Unless otherwise indicated as to these background facts, the Court relies upon the facts in the police report, D. 146-1, and, the facts contained in Snow's motion, D. 53.

video feed and via electronic transmission. D. 146-1. The reporting officers recognized the substance inside the five bags as cocaine. Id.

On August 29, 2011, the substance contained in one of the five plastic bags from the controlled buy was tested at the William A. Hinton State Laboratory Institute ("Hinton Lab") and determined to be .16 grams of cocaine. D. 53-1. Hevis Lleshi was the primary chemist and Dan Renczkowski was the confirmatory chemist. Id.

A grand jury entered a one-count indictment charging Snow with distribution of cocaine in a school zone in violation of 21 U.S.C. §§ 841(a)(1), 860 on September 8, 2011. D. 1. Snow pleaded guilty to the charge on January 5, 2012, D. 19 at 1, and was sentenced to 24 months imprisonment and six years of supervised release. D. 53 at 1. He subsequently filed his § 2255 petition upon learning about Dookhan's misconduct at the Hinton Lab. D. 53. He contends that he is entitled to relief because his guilty plea was not knowing, voluntary and intelligent because he was unaware of this misconduct at the time of his plea.

### IV.   Discussion

#### A.   Applicable Standard under *Ferrara*

Under the circumstances presented here, a collateral attack on a conviction based upon an allegedly involuntary guilty plea is governed by the two-prong test articulated by the First Circuit in Ferrara. To establish that a plea was involuntary, a petitioner must show: (1) "that some egregiously impermissible conduct (say, threats, blatant misrepresentations, or untoward blandishments by government agents) antedated the entry of his plea," and (2) "that the misconduct influenced his decision to plead guilty or, put another way, that it was material to that choice." Id. at 290 (citing Brady v. United States, 397 U.S. 742, 755 (1970)). Inquiring into

the elements of this two-part test requires the court to consider the totality of the circumstances surrounding the plea. Id.

Under the first prong, a petitioner must show "some particularly pernicious form of impermissible conduct." Id. at 291. Under the second prong, he must show a "reasonable probability" that, but for the misconduct, he would not have entered a guilty plea and would have insisted on going to trial. Id. at 294 (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)). This showing is met if a petitioner demonstrates a probability "sufficient to undermine confidence in a belief that the petitioner would have entered a plea." Id. It is an objective standard that governs whether a reasonable probability exists—the elementary question is "whether a reasonable defendant standing in petitioner's shoes would likely have altered his decision to plead guilty." Id. (citation omitted). Several factors are instructive in this analysis, including, but not limited to:

> (i) whether the sequestered evidence would have detracted from the factual basis used to support the plea; (ii) whether the sequestered evidence could have been used to impeach a witness whose credibility may have been outcome-determinative; (iii) whether the sequestered evidence was cumulative of other evidence already in the defendant's possession; (iv) whether the sequestered evidence would have influenced counsel's recommendation as to the desirability of accepting a particular plea bargain; and (v) whether the value of the sequestered evidence was outweighed by the benefits of entering into the plea agreement.

Id. (internal citations omitted).

**B.    Snow's Petition**

1.    *Egregiously Impermissible Conduct*

Snow claims that the conduct at the Hinton Lab was egregiously impermissible. D. 53 at 15. Snow relies upon evidence of Doohkan's actions (concerning the drugs in other cases) and an overall lack of quality control at the lab to suggest that there is a general lack of evidentiary integrity in any test performed at the Hinton Lab. D. 53 at 3–9. He recounts the findings from

government investigations concerning Annie Dookhan's actions during her tenure at the lab and her admission to mishandling evidence and falsifying testing documents. Id. at 3–7; D. 53-7 at 2. Snow's argues that "[t]he Hinton laboratory's vulnerabilities were systemic and pervasive and compromised the reliability of all its test results," D. 53 at 13, therefore "the true scope of Doohkan's misconduct may never be fully known." Id. at 8.

The First Circuit has not decided whether Dookhan's actions constituted egregiously impermissible misconduct under Ferrara, focusing instead on the materiality prong of the Ferrara framework. Wilkins v. United States, 754 F.3d 24, 28 (1st Cir. 2014) (noting that the defendant's "obvious inability" to make the required showing as to materiality made it unnecessary to resolve the parties competing arguments regarding the first prong); cf. United States v. Chin, Crim. No. 10-10076-PBS, 2014 WL 5343286, at *6 (D. Mass. Oct. 21, 2014) (basing the decision not reach the defendant's arguments regarding egregiously impermissible misconduct on the defendant's failure to satisfy the materiality prong); United States v. Smith, Crim. No. 07-10143-NMG, 2014 WL 7179472, at *3 (D. Mass. Dec. 15, 2014) (characterizing Wilkins as instructive and beginning its analysis with the materiality prong of the Ferrara inquiry). Although the Court acknowledges that Dookhan's conduct was disgraceful, and as the government admits, "remains profoundly disturbing," D. 144 at 1, because Snow cannot satisfy the materiality prong of the Ferrara inquiry, this Court need not decide whether Doohkan's actions are egregiously impermissible under the first prong of Ferrara. Wilkins, 754 F.3d at 28.

    2.    *Materiality*

Snow alleges that his plea was involuntary under Ferrara because he was not aware of Dookhan's misconduct at the Hinton Lab when he entered his guilty plea. D. 53 at 1. The Court is not convinced that Snow has demonstrated a "reasonable probability" that, but for the

misconduct, a reasonable person in his shoes would not have entered a guilty plea and would have insisted on going to trial. Ferrara, 456 F.3d at 294. Specifically, Snow rests his materiality argument on the assertion that "[t]he information about the misconduct is powerful impeachment evidence which could have supported a decision to go to trial, because it severely undercut the validity of drug certifications used to establish an element of the petitioner's offense." D. 53 at 16.

Snow does not allege that Dookhan handled the drugs in his case and the record does not suggest otherwise. See id. at 2 (listing Hevis Lleshi as the primary chemist and Daniel Renczkowski as the confirmatory chemist); see also Chin, 2014 WL 5343286, at *6 (finding an insufficient showing of materiality where Dookhan had no involvement in the defendant's case); Smith, 2014 WL 7179472, at *1 (determining the defendant could not show materiality despite the fact that Dookhan tested the drugs in his case); Wilkins, 754 F.3d at 27 (failing materiality prong where Dookhan was the primary chemist). Speculation that there was impropriety in the testing in this case because Doohkan merely worked at the Hinton Lab does not support a showing of materiality where the government need not have relied upon any testimony from Dookhan at trial and, instead, could have proffered testimony from the primary and/or confirmatory chemists in this cases. Accordingly, even if such evidence regarding Dookhan's misconduct were considered exculpatory evidence generally speaking, it is not material in this case, as it cannot be said that there is a substantial risk that the jury would have reached a different result had the evidence been admitted at trial. Cf. Ferrara, 456 F.3d at 292 (finding the prosecutor's misconduct material to petitioner's choice to plead guilty in part because the suppressed evidence tended to negate petitioner's guilt).

Further, Snow does not make any claim of factual innocence. The absence of a claim of innocence "cuts sharply against allowing [a petitioner's] motion to withdraw his guilty plea." United States v. Parrilla-Tirado, 22 F.3d 368, 373 (1st Cir. 1994). This is a significant omission especially where, as here, a petitioner admits guilt in open court. United States v. Merritt, 755 F.3d 6, 11 (1st Cir. 2014) (attributing substantial weight to petitioner's failure to claim factual innocence where petitioner "admitted his factual guilt at the change-of-plea hearing—an admission from which he has never retreated"); Chin, 2014 WL 5343286, at *4 (recognizing that the petitioner did not claim the drugs were not actually cocaine—"nor, on this record, could he, [since] . . . defendant admitted in open court that he had been in possession of cocaine"); Wilkins, 754 F.3d at 30 (explaining that unlike the petitioner in Ferrara, Wilkins "admitted his factual guilt . . . in open court" which is entitled to significant weight because Wilkins made no effort to explain his admission or assert factual innocence). Just like the defendant in Wilkins, Snow admitted his factual guilt in open court. D. 40 at 16-17. Snow admitted to distributing cocaine in a school zone and answered in the affirmative when the Court asked if he was pleading guilty because he was in fact guilty. Id. at 16.

There is also substantial circumstantial evidence here that the substance Snow sold to the CW was actually cocaine. See Wilkins, 754 F.3d at 29 (focusing on the circumstances surrounding the sale of cocaine and concluding that there was "powerful circumstantial evidence" of the petitioner's guilt that contributed to petitioner's failure to show a reasonable probability that he would have proceeded to trial had he known of Dookhan's misconduct). The circumstances surrounding the sale in this case resemble the sale in Wilkins. In Wilkins, an undercover officer posing as a drug purchaser approached one of the defendants and asked where the "stacks" were and when the defendant asked if he "needed something" the officer replied that

he "had 40." United States v. Wilkins, 943 F. Supp. 2d 248, 251 (D. Mass. 2013). The officer handed the defendant $40 and the defendant gave the officer his cell phone as collateral while he went to "get the stuff from [his] boy." Id. Another individual (the co-defendant) handed the defendant a parcel and the defendant handed the undercover officer a plastic bag containing a white granular substance later identified as crack cocaine. Id. at 251–52. The defendant took down the officer's cell phone number and dialed it so that the officer would have the defendant's number in his phone. Id. at 251. Upon arrest, officers discovered that both individuals were carrying additional bags of what appeared to be cocaine. Id. The court found that there was "overwhelming evidence (including defendants' own admissions in the course of the drug deal) that the contraband carried and dealt by [both defendants] was in fact crack cocaine." Id. at 257.

Similarly, there is substantial circumstantial evidence that Snow possessed and sold cocaine to the CW. Law enforcement personnel monitored the transaction using audio and video equipment. D. 146-1. The CW initiated the purchase by asking if Snow had "five for eighty"—a known street term pertaining to the sale of cocaine. D. 146-1. Snow removed the three plastic bags of cocaine from his mouth before handing them to the CW. Id.; see Chin, 2014 WL 5343286, at *4 (describing the defendant's actions as "consistent with a drug dealer who knew that he was selling the real deal" as opposed to counterfeit drugs because the defendant "concealed his wares in small pouches inside his mouth"). After the June 7, 2011 transaction,[2] Snow gave the CW his phone number and gave the CW a quote on the price of an "8-ball." D. 146-1. The officers present during the buy identified the substance purchased as cocaine. D.

---

[2] As the government notes, there was also (uncharged) relevant conduct by Snow including a later drug transaction with the CW on June 15, 2011 and the subsequent negotiation of another drug transaction on June 20, 2011 which provides further circumstantial evidence that the substance at issue during the June 7th (charged) transaction was cocaine. D. 144 at 7, 11 n. 4 (noting that Snow did not dispute these facts in the presentence report); D. 148 at 3-5.

146-1.[3]  Finally, Snow pled guilty to possessing cocaine with intent to distribute.  D. 40 at 16; D. 1.

Snow's argument that the evidence about Dookhan's misconduct is "powerful impeachment evidence which could have supported a decision to go to trial," D. 53 at 16, is unsupported by the record.  Snow contends that evidence of Dookhan's misconduct "severely undercut the validity of the drug certifications used to establish an element of the petitioner's offense."  Id.  This argument is flawed because there is no indication here that Dookhan ever handled the drug evidence obtained during the controlled purchase.  D. 53-1; see Commonwealth v. Mgaresh, No. 13-P-1431, 2014 WL 2974811, at *1 (Mass. App. Ct. July 3, 2014).  The First Circuit has affirmatively discounted the argument that "Dookhan's wrongdoing was so malignant . . . that it infected everything that was at the Hinton Lab." See Wilkins, 754 F.3d at 29 (commenting that petitioner failed to "explain[] how Dookhan could have contaminated the . . . bags without touching them" and concluding the "miasmic theory of evidentiary corruption has little to commend it").  Further, there is no evidence that the chemists who tested the drugs—or anyone else at the Hinton Lab—did anything wrong in this case.  D. 53-1 at 2; see also Scott, 467 Mass. at 341 (explaining that "[t]here is no suggestion in the investigative reports that Dookhan's misconduct extended beyond cases in which she served as either the primary or the confirmatory chemist").  Thus, unlike the situation in Ferrara, 456 F.3d at 292, where "the jury's verdict may well have hinged on its evaluation of [the witness'] credibility" making his testimony

---

[3] Defendant does not dispute this claim.  There is, however, no indication in the papers that the officers field tested the drugs.  An independent field test would perhaps be more important in a case where Dookhan served as the primary or secondary chemist but where, as here, there is no indication that she came in contact with the drugs at issue and there was other substantial circumstantial evidence that the seized substance was cocaine, a field test is of lesser import.

enormously significant for impeachment purposes, it cannot be said here that evidence of Dookhan's misconduct would not have had a profound effect on the outcome of his trial. Here, the government would likely have called Hevis Lleshi—the primary chemist—or Daniel Renczkowski—the confirmatory chemist—to testify about the results of the test performed on the drugs purchased during the controlled buy. D. 53-1. The testimony of these witnesses would have been corroborated, see Ferrara, 456 F.3d at 296 (citing United States v. Martínez-Medina, 279 F.3d 105, 126 (1st Cir. 2002)) by the circumstantial evidence that suggests that Snow distributed a substance that was cocaine.

Accordingly, after evaluating the totality of the circumstances, the Court cannot agree that a reasonable person in the defendant's position would have chosen to proceed to trial given the facts of this case. Because Snow has failed to satisfy the second prong of the Ferrara test, his guilty plea was knowingly, voluntarily and intelligently made and his petition must fail.

**V.     Certificate of Appealability**

A final order is subject to review on appeal by the First Circuit in a proceeding under section 2255 only if a petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(a), (c)(2). Because this Court rejects Snow's due process claims on the merits, petitioner has the burden of demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

Snow argues his due process rights were violated where his guilty plea was not knowing, voluntary and intelligent because he was unaware of Dookhan's misconduct at the Hinton Lab. D. 53 at 1. The Court concludes that petitioner's guilty plea was not involuntary because petitioner failed to demonstrate a "reasonable probability" that, but for Dookhan's misconduct, a

reasonable person in his position would not have entered a guilty plea.  Ferrara, 456 F.3d at 294. The Court does not believe that reasonable jurists would find this conclusion debatable or wrong. The Court, therefore, is not inclined to issue a certificate of appealability, but will give petitioner until May 25, 2015 to file a memorandum, not to exceed five pages, if he seeks to address the issue of whether a certificate of appealability is warranted as to his habeas petition regarding the voluntariness of his guilty plea.

**VI.     Conclusion**

For all of the aforementioned reasons, petitioner's Motion to Vacate under 28 U.S.C. § 2255, D. 53, is DENIED.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge